IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

Symphony Diagnostic Services )
No. 1, Inc. d/b/a MobileExUSA, )
                Plaintiff, )
vs. ) No. 13-4196-CV-C-FJG
Kimberly Greenbaum and, )
Josephine Tabanag, )
                Defendants. )

**ORDER**

Pending before the Court are (1) Defendant Kimberly Greenbaum's Motion for Summary Judgment (Doc. No. 37); and (2) Defendant Josephine Tabanag's Motion for Summary Judgment (Doc. No. 39). As the issues presented in the two motions for summary judgment are nearly identical, the Court considers both motions together.

**I.    Background**

In 2007, Defendant Kimberly Greenbaum ("Defendant Greenbaum" or "Greenbaum") began working as a mobile x-ray technician for Ozark Mobile Imaging, LLC ("Ozark"). When Greenbaum began her employment at Ozark, she was a part-time employee earning $17.50 per hour. On or about September 6, 2007, Greenbaum executed a Covenant Not to Compete with Ozark which contained a term of two (2) years and a one hundred (100) mile radius of St. Joseph, Missouri, Kansas City, Missouri, Columbia, Missouri, Joplin, Missouri, Laurie, Missouri, Springfield, Missouri, Lincoln, Nebraska and Omaha, Nebraska. See Doc. No. 1, Pl.'s Compl. Ex. A. Greenbaum was required to sign the Covenant Not to Compete as a condition of her employment with Ozark. The Covenant Not to Compete states: "*In consideration of his/her employment* by Mobile Medical Services Inc., Ozark Mobile Imaging, Clearview Mobile Imaging, LLC and/or its affiliates, the undersigned Employee hereby agrees that he/she will not, during the term of his/her employment nor for two (2) years immediately following the termination

of his/her employment . . . compete or otherwise jeopardize the company's facilities and/or customers . . . ." Doc. No. 1, Pl.'s Compl. Ex. A (emphasis added).

Similarly, on or about October 6, 2010, Defendant Josephine Tabanag ("Defendant Tabanag" or "Tabanag") began working as a mobile x-ray technician for Ozark Mobile Imaging, LLC ("Ozark"). Tabanag executed a Covenant Not to Compete with Ozark which contained a term of two (2) years and a one hundred (100) mile radius of St. Joseph, Missouri, Kansas City, Missouri, Columbia, Missouri, Joplin, Missouri, Laurie, Missouri, Springfield, Missouri, Lincoln, Nebraska and Omaha, Nebraska. See Doc. No. 1, Pl.'s Compl. Ex. B. Tabanag was required to sign the Covenant Not to Compete as a condition of her employment with Ozark. The Covenant Not to Compete states: "*In consideration of his/her employment* by Mobile Medical Services Inc., Ozark Mobile Imaging, Clearview Mobile Imaging, LLC and/or its affiliates, the undersigned Employee hereby agrees that he/she will not, during the term of his/her employment nor for two (2) years immediately following the termination of his/her employment . . . compete or otherwise jeopardize the company's facilities and/or customers . . .." Doc. No. 1, Pl.'s Compl. Ex. B (emphasis added).

While employed with Ozark, Greenbaum worked as a mobile x-ray technician on a full-time basis. At some time after she executed the Covenant Not to Compete, Greenbaum was given the position of "District Manager" with Ozark. While employed in the position of District Manager with Ozark, Greenbaum made $21.50 per hour plus call pay. Similarly, while employed with Ozark, Tabanag worked as a mobile x-ray technician on a full-time basis. Tabanag also received benefits from Ozark. While employed by Ozark, Tabanag received $17.50 per hour.

On or about December 11, 2012, Ozark was sold in an Asset Purchase Agreement to MobileX USA. On or about December 3, 2012, Defendant Greenbaum was presented with a "conditional offer of employment as a per diem Mobile Radiologic Technologist in Columbia, MO" by MobileX USA. On or around January 2013, Defendant Tabanag was offered a position as a per diem Mobile Radiologic Technologist in Columbia, MO by MobileX USA.  MobileX USA's offer of employment for both defendants was as a PRN employee (i.e., on an "as needed basis" with no guaranteed number of hours).  MobileX USA's offer of employment to Greenbaum USA was conditional upon a 90 day probationary period, was not accompanied by any employee benefits due to being offered a position as a PRN employee, and was not for a "District Manager" position. Similarly, MobileX USA's offer of employment to Tabanag was on a PRN basis and was not accompanied by any employee benefits similar to those she enjoyed while employed with Ozark due to being offered only a part-time job.  Both Greenbaum and Tabanag refused to sign the MobileX USA employment offer.

At the time of Ozark's sale to MobileX USA in the Asset Purchase Agreement, Greenbaum and Tabanag did not contemporaneously consent to the assignment of their Covenants Not to Compete from Ozark to MobileX USA. To date, Greenbaum and Tabanag have never consented to the assignment of their Covenants Not to Compete from Ozark to MobileX USA. In or around January 2013, Greenbaum accepted a position as a mobile x-ray technician for Biotech X-ray, Inc. In or around February 2013, Tabanag accepted a position as a mobile x-ray technician for Biotech X-ray, Inc.

On September 5, 2013, Plaintiff filed the Complaint.  The claims asserted in Plaintiff's Complaint are as follows:  Count I - Breach of contract against Greenbaum; Count II - Breach of contract against Tabanag; Count III - Breach of fiduciary duties

against Greenbaum and Tabanag (asserting breaches of both common law and contractual fiduciary duties); and Count IV - Tortious interference with contract against Greenbaum and Tabanag (asserting defendants interfered with plaintiff's business relationships with its customers).

## II. Standard

Summary judgment is appropriate if the movant demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). The facts and inferences are viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–90 (1986). The moving party must carry the burden of establishing both the absence of a genuine issue of material fact and that such party is entitled to judgment as a matter of law. Matsushita, 475 U.S. at 586–90.

A nonmoving party must establish more than "the mere existence of a scintilla of evidence" in support of its position. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

> The nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.

Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (citations and quotations omitted)

## III. Analysis

Defendants argue that all claims in plaintiff's complaint should be dismissed because (1) plaintiff may not enforce the Covenants Not to Compete because defendants did not provide their contemporaneous consent to the assignment of same to plaintiff

4

when it purchased Ozark, as required by Missouri law; (2) after the asset purchase of Ozark by Plaintiff, defendants were offered positions with plaintiff, but the offers constituted a substantial and material change to the contract obligations and duties of defendants compared to when they were employed by Ozark; and (3) the language of the Covenants Not to Compete themselves do not support Plaintiff's contention that Plaintiff is a party entitled to enforce the Covenants Not to Compete.

In response, plaintiff notes that a grant of defendants' motions for summary judgment would not dispose of all claims pled in the Complaint (Doc. No. 1). In particular, plaintiff asserts that defendants have only set forth arguments as to the non-compete claim asserted in Counts I and II; however, plaintiff notes that that within its breach of contract claims in Counts I and II are claims regarding the non-solicitation and misappropriation portions of those same contracts. Furthermore, plaintiff notes that Count III asserts claims against defendants for breach of certain common law fiduciary duties owed by defendants to plaintiff; and Count IV sets forth a claim for tortious interference with contract that is based not only on the contracts, but also on other common law duties. Although defendants in their reply suggestions argue that all the counts of the complaint derive from the Covenants not to Compete, the Court does not believe that position to be accurate. Plaintiff has stated claims in Count III and Count IV that could, theoretically, be grounded on duties arising outside the contracts signed by defendants. The Court, however, agrees with defendants with respect to Counts I and II, as both are breach of contract claims, and the duties established by the contracts are found within the Covenants Not to Compete and the related Confidentiality Agreements. Thus, if the Court finds in defendants' favor on the motion for summary judgment, Counts I and II will be disposed of in full. The Court next turns to defendants' specific arguments.

    A.    Contemporaneous Consent to Assignment of Covenant Not to Compete

Defendants argue that Missouri law requires "contemporaneous consent" for a covenant not to compete to be assigned to an asset purchaser. It is undisputed that plaintiff did not get the contemporaneous consent of defendants Greenbaum and

5

Case 2:13-cv-04196-NKL   Document 51   Filed 03/16/15   Page 5 of 9

Tabanag at the time of the asset sale with Ozark, defendants' previous employer. In Roeder v. Ferrell-Duncan Clinic, Inc., 155 S.W.3d 76 (Mo. App. 2004), the Missouri Court of Appeals found that, similar facts, that the "contemporaneous consent" from the employee was necessary in order to assign the employment contract to the subsequent employer. Id. at 85 (stating "[The employer's] attempted assignment of [the employee's] employment contract to [a third party] without his contemporaneous consent was improper, illegal and void."). The court found that the employer's argument that consent was unnecessary to assign the contract was "inconsistent with Missouri public policy and long-standing precedent." Id. at 84. Therefore, the court held that the plaintiff was "not entitled to enforce the covenant against [the employee]." Id. at 89. See also Alldredge v. Twenty-Five Thirty-Two Broadway Corp., 509 S.W.2d 744, 749 (Mo. App. 1974) (finding, generally, the law settled that a contract is not assignable without consent of both parties); Allied Pope Line Corp. v. Studley, 191 S.W.2d 317, 320 (Mo. App. 1946) (same); D.C. Hardy Implement Co. v. South Bend Iron Works, 129 Mo. 222, 31 S.W. 599, 599-600 (1895) (requiring subsequent assent when parties are substituted in an agreement).

Plaintiff points to cases such as Schnucks v. Twenty-Five, Inc. v. Bettendorf, 595 S.W.2d 279 (Mo. App. 1979) and Orthotic & Prosthetic Lab, Inc. v. Pott, 851 S.W.2d 311 (Mo. App. 1986), to argue that contemporaneous consent is unnecessary. Defendants, however, point out that the Court in Roeder distinguished those cases, as they stand for the proposition that "[T]here is no public policy prohibiting the assignment of a covenant not to compete when it is incident to the sale of a business . . . ." Roeder, 155 S.W.3d at 85. Thus, in both Schnucks and Orthotic, the non-compete agreements were ancillary to the sale of a business, and were not non-compete agreements made in a previous employment relationship by hourly employees. In Schnucks the court explained why covenants ancillary to a sale of business are treated differently: "Unlike the promisor in an employment contract, the promisor in the sale of a business has a superior bargaining position from which he may negotiate the best price for his covenant not to compete." Schnucks, 595 S.W.2d at 285. Additionally, in Orthotic, the employment agreement itself

6

included language making the covenant not to compete assignable (e.g., "This Agreement shall be binding on and inure to the benefit of the parties and their respective heirs, successors, assigns and legal representatives") and the Orthotic court held that such language is sufficient to render a non-compete agreement assignable. Orthotic, 851 S.W.2d at 639. The conracts at issue in this case include no such language regarding assignability. The Court agrees with defendants that Schnucks and Orthotic are distinguishable.

Plaintiff also points to Rathmann Group, Inc. v. Tanenbaum, 1989 WL 69880, No. 89-0998C(6) (E.D. Mo. June 22, 1989), an unreported case from the Eastern District of Missouri in which the court held that an employee's restrictive covenant was assignable to a later purchaser of the business. In Rathmann Group, however, the defendant employee continued to work for the purchaser for nine months after the business was sold, and the terms and conditions of the employee's employment did not change. Defendants note that they did not continue to work for plaintiff after their employer completed the asset sale, and the terms and conditions of their offered employment were different from what their employer had offered. Additionally, the Court notes that a decision from a federal district court is not binding authority on the state of Missouri law, particularly when such a decision pre-dates the Roeder opinion by fifteen years. Again, the Court finds Rathmann Group to be distinguishable from the case at hand.

Finally, plaintiff points to Alexander & Alexander, Inc. v. Koelz, 722 S.W.2d 311 (Mo. App. E.D. 1986), wherein the company that the employee worked for was merged with its parent, the surviving corporation. When the employee's employment was terminated, the former employee proceeded to violate the non-compete contract. The surviving corporation sued, and the Missouri Court of Appeals grappled with the question of "whether the surviving company in a statutory merger can enforce covenants not to compete contained in contracts between the merged company and employees of that company." 722 S.W.2d at 312. Although ultimately answering that question in the affirmative, the court in Alexander distinguished its opinion from Alldredge, 509 S.W.2d at

7

797, noting that Alldredge involved not a merger but a partial sale of a business. 722 S.W.2d at 314. Again, the relationship between defendants' former employer and plaintiff is similar to Alldredge, as the two were not combined as part of a statutory merger, but rather plaintiff purchased Ozark through an asset sale.

Therefore, upon consideration of the arguments raised by the parties, the Court finds that the opinion of the Missouri Court of Appeals in Roeder v. Ferrell-Duncan Clinic, Inc., 155 S.W.3d 76 (Mo. App. 2004), to be the best statement of Missouri law regarding the assignability of employment contracts, including non-compete and confidentiality agreements. The Court, therefore, finds that defendants' motion for summary judgment should be **GRANTED**, as plaintiff cannot enforce the agreements signed by defendants.

As the Court finds that the contracts are unenforceable, the Court declines to reach the merits of defendants' other arguments raised in their motions for summary judgment.

B.   Executive Summaries

Although the Court does not dispose of Counts III and IV of plaintiff's complaint through this order, the Court believes additional briefing on those two counts would aid the Court in efficiently deciding the remaining claims in this case. Therefore, the parties are **ORDERED** to file Executive Summaries of the remaining claims in this case (contained in Counts III and IV), which should narrow the issues to be decided at trial. The Executive Summaries shall be filed as follows:

(1)   As to each claim in Counts III and IV of its complaint, plaintiff **SHALL** provide the following information to the Court: (a) the elements needed to be proven for a submissible case; (b) concise and non-argumentative references to evidence that supports the necessary elements; and (c) citations to legal authority supporting this claim. To the extent that evidence or legal argument in the summary judgment record supports the claim, plaintiff may reference that evidence. Plaintiff's Executive Summary shall be no longer than twenty pages, in 12-point font, and double spaced. Plaintiff shall submit its Executive Summary on or before **APRIL 9, 2015.**

(2)   Defendants shall file their Opposition to the Executive Summary on or before **APRIL 30, 2015.** Defendants' opposition **SHALL** provide the following information to the Court: (a) a brief examination of which facts in

the Executive Summary are disputed; (2) citations from the pleadings/discovery as to why the causes of action fail under the law, or are not supported by facts and/or evidence; and (3) legal authority for their opposition.  Again, defendants may reference their summary judgment briefing as necessary to for evidentiary or legal support.  Defendants' Opposition shall be no longer than twenty pages, in 12-point font, and double spaced.  The Court expects defendants to file <u>one</u> Opposition document.

Thereafter, the Court will issue a ruling based on the Executive Summary and Opposition.  The Court cautions the parties that, if they fail to provide evidence sufficient to support their claims, the Court may dismiss such claims prior to trial.

## IV. Conclusion

Therefore, for the foregoing reasons, defendants' motions for summary judgment (Doc. Nos. 37 and 39) are **GRANTED**.  Judgment in defendants' favor is granted on Counts I and II of plaintiff's complaint.  Plaintiff is to provide its Executive Summary, as detailed above, on or before **APRIL 9, 2015**.  Defendants shall file their Opposition to the Executive Summary on or before **APRIL 30, 2015.**

**IT IS SO ORDERED.**

<u>/s/Fernando J. Gaitan, Jr.</u>
Fernando J. Gaitan, Jr.
United States District Judge

Dated:  March 16, 2015
Kansas City, Missouri